HELENA SOUTHWESTERN RAILROAD COMPANY *v.* COOLIDGE.

Opinion delivered October 19, 1925.

1. RAILROADS—LIABILITY FOR FIRES—VALIDITY OF STATUTE.—The act of April 18, 1907 (Crawford & Moses' Dig., § 8569), making railroad companies liable for the destruction of or damage to property caused by fire resulting from the operation of such railroads, is not invalid as denying to such corporations due process or the equal protection of the law.

2. RAILROADS—LIABILITY FOR FIRES—CONSTRUCTION OF STATUTE.—The term "railroad," as used in Crawford & Moses' Dig., § 8569, refers only to railroads that are operated as common carriers, and does not apply to corporations which operate a railroad as an incident to or in connection with an industrial enterprise.

3. RAILROADS—COMMON CARRIERS.—Where defendant is a regular organized railroad company, it does not cease to be a common carrier, within Crawford & Moses' Dig., § 8569, because it is engaged in carrying a particular kind of freight for a single customer, since it can be compelled to carry freight for all who offer it for shipment over its line.

4. RAILROADS—LIABILITY FOR FIRE—EVIDENCE.—Where grass near defendant's railroad track is discovered to be on fire shortly after a train has passed, and the fire spreads to and burns the property of another, and the proof does not establish conclusively some other origin of the fire, the jury is justified in finding that the fire originated from the sparks of defendant's locomotive.

Appeal from Phillips Circuit Court; *E. D. Robertson*, Judge; affirmed.

*Moore, Walker & Moore,* for appellant.

*W. G. Dinning,* for appellee.

HART, J. C. R. Coolidge sued the Helena Southwestern Railroad Company to recover damages to his alfalfa field caused by fire alleged to have been communicated from a locomotive operated on the line of the railroad of the defendant.

There was a verdict and judgment in favor of the plaintiff in the sum of $1000, and the defendant has appealed to this court.

The first assignment of error is that the court erred in instructing the jury. In making this contention counsel for the defendant rely upon the action of the court in allowing the jury to find for the plaintiff independently of negligence, if it should find that the damage occurred by reason of fire communicated from the locomotive of the defendant to the alfalfa field of the plaintiff.

This court has held in *St. Louis & S. F. R. Co.* v. *Shore,* 89 Ark. 418, and numerous other cases that § 8569 of Crawford & Moses' Digest, making railroad companies liable for the destruction of or damage to property caused by fire resulting from the operation of such railroads, is valid and does not deny to the railroad companies the equal protection of the law, and does not deprive them of their property without due process of law.

This court has also held that the term "railroad," as used in this section, refers only to railroads that are operated as common carriers, and does not apply to corporations which only operate a railroad as an incident to, or in connection with an industrial enterprise. *Valley Lbr. Co.* v. *Westmoreland Bros.,* 159 Ark. 484.

Counsel for the defendant seek a reversal of the judgment upon the authority of the case last cited; but in doing so have not taken into proper consideration that the principles of law there decided have no application to the facts of the case at bar.

L. J. Wilkes, superintendent of the railroad of the defendant, was the only witness on this point. We quote from his testimony the following:

"Q. It is a railroad corporation and exercises the rights and powers of any other railroad corporation, does it not? A. Yes sir—how you mean? Q. It is a regular railroad corporation? A. It is a regular railroad, utilized for the sole purpose of conveying logs for the Chicago Mill & Lumber Company. Q. But it is a regularly organized railroad company? A. Yes sir, it is a regularly organized railroad company."

In another part of his testimony, he says that his company owns a comparatively small trackage of its own, which runs from the mill of the Chicago Mill & Lumber Company to the tracks of the Missouri Pacific Railroad Company and one of its branch lines. It stated further that these companies are regularly established railroads in the general railroad business. The defendant had standard railroad equipment which it operated in part over the tracks of these two railroad companies.

Now, it is apparent from his testimony, that the defendant was duly organized as a railroad under the statutes of the State of Arkansas. See sub-division 2 of chap. 149 relating to the incorporation, organization, and existence of railroad companies.

Section 8450 of Crawford & Moses' Digest defines the powers and liabilities of such corporations. Railroad corporations which are organized under the provisions referred to are given certain general powers and are subject to the general liabilities and restrictions expressed in the statute. In other words, when the defendant was organized as a railroad company, as testified to by its superintendent, it became a common carrier under the statute referred to, and has all the powers and is subject to all the restrictions of common carriers. If the defendant is a regular organized railroad company, it can not cease to be a common carrier because it may only carry a particular kind of freight for a single customer. It could be compelled to carry freight for all who offered it for shipment over its line. Therefore, under the undisputed evidence, if there was

liability at all on the part of the defendant, it was an absolute liability, and the question of negligence does not enter into the case.

It is next insisted that the evidence is not legally sufficient to show that the fire which destroyed the alfalfa field of the plaintiff was communicated by the operation of one of the defendant's locomotives.

The undisputed proof shows that the defendant operates an engine which burns coal, and that sparks are emitted from it which fall on its right-of-way. The alfalfa field of the plaintiff burned shortly after one of the defendant's engines had passed by it. It is the theory of the defendant that there was a corn field belonging to the plaintiff on the opposite side of the railroad track from the alfalfa field, and that the plaintiff's own servants had fired some corn-stalks; that the wind rose and caused the fire to cross the right-of-way of the defendant and burn the alfafa field of the plaintiff.

Several witnesses for the defendant testified that the fire was communicated to the alfalfa field in this way, and other facts and circumstances were introduced in evidence by it tending to show that the fire could not have resulted in any other way.

It can not be said, however, that this evidence is uncontradicted. Several witnesses for the plaintiff testified positively that there was no fire in the cornfield on the day in question, and that they observed a fire in some grass on the right-of-way of the defendant immediately after its engine passed, and that this fire spread rapidly in the direction of the alfalfa field and burned it. They saw the fire spread from the right-of-way into the alfalfa field and burn it.

This court has repeatedly held that where grass near a railroad track is discovered to be on fire shortly after a train has passed, and the fire spreads to the property of another and burns it, and the proof does not establish conclusively some other origin of the fire, the jury is justified in finding that the fire originated from sparks of the engine. *Cairo, Trumann & Sou. Rd. Co.* v. *Brooks,*

112 Ark. 298, and cases cited. As we have just seen, the evidence for the plaintiff showed that the grass commenced to burn on the right-of-way of the railroad just after one of its engines passed, and the same witnesses testified that there was no other source from which the fire might have occurred.

There is also dispute between the witnesses as to the value of the alfalfa, and as to the fact of whether it was completely destroyed by the fire. Here again the jury has settled the conflict in the evidence in favor of the plaintiff, and the evidence for the plaintiff warranted the jury in finding a much greater value for the alfalfa, which was damaged and destroyed, than that shown by the verdict of the jury.

It follows that the evidence was legally sufficient to warrant the verdict of the jury, and, there being no reversible error in the record, the judgment will be affirmed.